# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| VOLKAN TURAN, | ) | Case No. 23-80007 |
| | ) | |
| _____ Debtor. | ) | |
| | ) | |
| TATYANA RIVTIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 23-96008 |
| | ) | |
| VOLKAN TURAN | ) | |
| | ) | |
| _____ Defendant. | ) | |

## NOTICE OF FILING

To:   Paul M. Bach
      Bach Law Offices
      P.O. Box 1285
      Northbrook, IL 60062
      pbachx2@gmail.com

YOU ARE HEREBY NOTIFIED that on this date, November 14, 2024, we have filed with the Clerk of the United States Bankruptcy Court, for the Northern District of Illinois, Western Division, **ANSWER TO COMPLAINT**, a copy of which is attached hereto and herewith served upon you.

_____/s/ David R. Herzog_____
DAVID R. HERZOG

David R. Herzog
Law Office of David R. Herzog LLC
Attorney for the Defendant
53 W. Jackson Blvd., Suite 1442
Chicago, IL 60604
(312) 977-1600
drh@dherzoglaw.com

1

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that he caused to be served a copy of the foregoing instrument on the attached service list via the ECF system and/or electronic mail on this 13th day of November, 2024.

_____ */s/ David R. Herzog*_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| VOLKAN TURAN, | ) | Case No. 23-80007 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| TATYANA RIVTIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 23-96008 |
| | ) | |
| VOLKAN TURAN | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER TO COMPLAINT OBJECTING TO DISCHARGEABILITY
## PURSUANT TO 11 U.S.C. §523(A)(2)(A) and (A)(4)

NOW COMES the Defendant, VOLKAN TURAN, by and through his attorneys, David R. Herzog and the law Office of David R. Herzog, LLC, and for its ANSWER to the Complaint of TATYANA RIVTIS, states as follows:

## JURISDICTION AND VENUE

1.      This adversary proceeding is brought by Tatyana against Turan and seeks judgment under Bankruptcy Code §523(a)(2)(A) and (a)(4) based upon false representations, false pretenses and/or the actual fraud and/or embezzlement by the Debtor.

**ANSWER:**   Defendant admits that the adversary proceeding is brought by Tatyana against Turan and seeks judgment under Bankruptcy Code §523(a)(2)(A), but but denies the remaining allegations contained in Paragraph 1 of the Complaint.

1

## PARTIES

2.      The Debtor/Defendant is a resident of 5 Barrington Bourne, Barrington Bourne, Illinois.

**ANSWER:**   Defendant admits the allegations contained in Paragraph 2 of the Complaint.

3.      On January 5, 2023, the Debtor/Defendant filed a voluntary chapter 7 bankruptcy petition (the "Bankruptcy Case").

**ANSWER:**   Defendant admits the allegations contained in Paragraph 3 of the Complaint.

4.      On April 5, 2023, the Court granted the Debtor/Defendant's Motion to convert the Bankruptcy Case from one under Chapter 7 to a Chapter 13 Case.

**ANSWER:**   Defendant admits the allegations contained in Paragraph 4 of the Complaint.

5.      Tatyana Rivtis ("Tatyana") is an individual who resides in Lake County, Illinois. Anna Rivtis ("Anna") is the daughter of Tatyana.

**ANSWER:**   Defendant has insufficient information or knowledge to either admit or deny the allegations contained in paragraph 5 of the Complaint.

## JURISDICTION

6.      This court has jurisdiction pursuant to 28 U.S.C. §1334(b) and the general order of reference as stated in Internal Operating Procedure 15 of the Northern District of Illinois. This is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2)(H), (I), (J), and (O).

**ANSWER:**   Defendant admits the allegations contained in Paragraph 6 of the Complaint.

7.     Venue is proper pursuant to 28 U.S.C. §1409(a) as this matter is proceeding related to a pending case in this District under Title 11.

**ANSWER:**     Defendant admits the allegations contained in Paragraph 7 of the Complaint.

8.     Tatyana consents to the entry of a final order by this Court.

**ANSWER:**     Defendant admits the allegations contained in Paragraph 8 of the Complaint.

## REAL ESTATE

9.     On January 22, 2004 (the date of recording with the McHenry County Recorder), Nicholas D. Kouzoukas via Warranty Deed conveyed the real estate commonly known as 5 Barrington Bourne, Barrington Hills, Illinois (PIN 19-36-479-002) ("the Barrington Property") to the Debtor making the Debtor the owner in fee simple of the Barrington Property as of January 22, 2004.

**ANSWER:**     Defendant admits the allegations contained in Paragraph 9 of the Complaint.

10.     On October 14, 2021 (the date of recording with the McHenry County Recorder), Victoria jean Klepacki via Warranty Deed conveyed the real estate commonly known as Lots 65 and 66 in Porten's Hickory Knoll Subdivision, McHenry, Illinois (PIN 15-29-327-018 and 15-29-327-018) ("the Hickory Knoll Property") to the Debtor making the Debtor the owner in fee simple of the Hickory Knoll Property as of October 14, 2021.

**ANSWER:**     Defendant admits the allegations contained in Paragraph 10 of the Complaint.

11.     On March 11, 2022 (the date of recording with the McHenry County Recorder), GT Ringwood LLC via Warranty Deed conveyed the real estate commonly known as 4707

Moraine Trail, Ringwood, Illinois (PIN 09-03-127-004) ("the Ringwood Property") to the Debtor making the Debtor the owner in fee simple of the Hickory Knoll Property as of March 11, 2022.

**ANSWER:** Defendant admits the allegations contained in Paragraph 11 of the Complaint.

## RELEVANT FACTS

12. Turan, for at least 20 years prior, had solely owned and operated a small company called Mint Remodeling Corporation (Mint).[1] *Exhibit 1, paragraph 6.*

**ANSWER:** Defendant admits the allegations contained in Paragraph 12 of the Complaint.

13. Turan, through Mint, was engaged in the business of remodeling and rehabilitating real estate. *Exhibit 1, paragraph 6.*

**ANSWER:** Defendant admits the allegations contained in Paragraph 13 of the Complaint.

14. One such home remodeling project undertaken by Mint was located at 3517 N. Keating Avenue in Chicago (Keating property). *Exhibit 1, paragraph 6.*

**ANSWER:** Defendant admits the allegations contained in Paragraph 14 of the Complaint.

15. The Keating property was owned by an entity known as Woma, Inc. (Woma), which was in turn owned by Wilma Wyngaart. Turan was the general contractor responsible for rehabbing the Keating property. In exchange for his work, and upon the sale of the Keating property, Turan was to receive 50% of the sale proceeds. *Exhibit 1, paragraph 7.*

---

[1] The facts stated herein are stated in an opinion of the Illinois Appellate Court Case Number 1-21-0147 (March 31, 2022), in *Tatyana Rivtis and Anna (Anya) Rivtis vs. Woma, Inc., Volkan Turan, Mint Remodeling Corporation, Germuska Marko d/b/a Marko Quality, and Father & Son Rodriguez Law Care Inc.* A copy of the Illinois Appellate Court decision is attached as Exhibit 1 to this Complaint. The factual findings of the Appellate Court are res judicata and Turan is collaterally estopped from being denied by Turan.

**ANSWER:** Defendant admits the allegations contained in Paragraph 15 of the Complaint.

16.     In 2017, Turan met with an acquaintance, Anna Rivtis, and they discussed his involvement in the Keating property. Turan explained to Anna that he had invested $60,000 of his own funds into the rehabilitation and needed an infusion of capital to complete the work. After discussing the potential profit from the sale of the Keating property, Anna suggested the possibility that her mother, Tatyana, may have an interest in loaning Turan funds so that he could complete the project. Anna explained that her mother had experience in loaning money and investing in such projects. *Exhibit 1, paragraph 8.*

**ANSWER:** Defendant admits the allegations contained in Paragraph 16 of the Complaint.

17.     Prior to meeting with Tatyana, Turan sent Anna a "template" of a promissory note. Anna filled in the address, dollar amount, and other "minor things." Turan told Anna he would personally guarantee the loan and that, instead of interest, he would pay Tatyana 17% of the profit from the sale of the Keating property. *Exhibit 1, paragraph 9.*

**ANSWER:** Defendant admits the allegations contained in Paragraph 17 of the Complaint.

18.     Tatyana and Turan eventually spoke and agreed to meet so that they could further discuss a potential loan to Turan. On August 23, 2017, Tatyana and Turan met at a coffee shop where Tatyana agreed to loan Turan $50,000 as an "investor" in the Keating property. Exhibit 1, paragraph 10.

**ANSWER:** Defendant admits that Tatyana agreed to loan Turan $50,000, but denies the remaining allegations contained in Paragraph 18 of the Complaint.

19.     They both signed a document titled "Promissory Note," which stated in relevant

part:

> "For value received $50,000.00 (fiftythousandUSdollar) received (hereinafter
> referred to as principal), as borrowed capital for project at 3517 N Keating,
> Chicago, IL 60641, I understand ("Debtor") Volkan Turan as president of Mint
> Remodeling Corporation *** Barrington, Hills, IL 60010 promises to pay to
> Tatyana Rivits full $50,000.00 (fiftythousandUSdollar) as principal plus 17% of
> the profit earned before tax (tax free) from the project, property tax and other
> discussed charges will be prorated at the time of sale based on 17% of this share.
> Said sum will be paid in 2 different cashier checks, 1 for the $50,000.00
> (fiftythousandUSdollar) and remaining balance as a separate cashier check, within
> 10 days after closing of the property to Tatyana Rivtis.
>
> This note shall be at the option of any party hereto be due with two weeks' notice
> prior closing of the property.
>
> In the event this note shall be in default, and placed with an attorney for
> collection, then the undersigned agree to pay all reasonable attorney fees and
> costs of collections. Payments not paid with five (5) days of the due date shall be
> subject to a late charge of 5% of payment.
> ***
> Guaranty
>
> We the undersigned jointly and severally guarantee the prompt and punctual
> payment of all monies due under the aforesaid now and agree to remain bound
> until fully paid.
>     Debtor: Mint Remodeling Corporation ***" [*sic*]
> *Exhibit 1, paragraph 10.*

**ANSWER:**    Defendant admits the allegations contained in Paragraph 19 of the

Complaint.

20.     After signing the note, Tatyana and Turan proceeded to Tatyana's bank, where she

tendered him a cashier's check in the agreed amount of $50,000. At Turan's request, the check

was made payable to Mint. Shortly thereafter, Turan deposited the check into Mint's company

bank account. *Exhibit 1, paragraph 11.*

**ANSWER:**    Defendant admits the allegations contained in Paragraph 20 of the

Complaint.

21.     Upon depositing the check, Turan—by way of a wire transfer—used $40,213 of the $50,000 to pay his personal residential mortgage, which at the time was in arrears. *Exhibit 1, paragraph 11.*

**ANSWER:**   Defendant admits the allegations contained in Paragraph 21 of the Complaint.

22.     Some months later, in May 2018, Tatyana texted Turan demanding repayment of her investment. Turan neither responded to Tatyana's demand for repayment, nor did he inform Tatyana that he had used the borrowed money to pay off the mortgage on his house. Exhibit 1, paragraph 12.

**ANSWER:**   Defendant admits the allegations contained in Paragraph 22 of the Complaint.

23.     In July, Tatyana's daughter, Anna, recorded a mechanic's lien on the Keating property. The mechanic's lien asserted that Anna had performed certain work to improve the property, at the direction of Turan, and Anna had not been paid. Tatyana and Anna then filed a joint complaint in the circuit court. The complaint sought to foreclose on Anna's mechanic's lien and alleged that Turan and Mint breached the promissory note by failing to pay Tatyana the $50,000 upon her demand.[2] The complaint claimed that Turan personally guaranteed the note. *Exhibit 1, paragraph 13.*

**ANSWER:**   Defendant admits the allegations contained in Paragraph 23 of the Complaint.

---

[2] Woma Inc., as the record owner of the Keating property, was named as a defendant. Germuska Marko and Father & Son Rodriguez Lawn Care Inc. were also named as defendants due to their respective recorded liens on the Keating property. All three parties were ultimately dismissed from the action.

24.     After reaching a settlement with the Keating property owner, Anna released her lien, and her cause of action was dismissed. Tatyana then filed an amended complaint. *Exhibit 1, paragraph 14.*

**ANSWER:**  Defendant admits the allegations contained in Paragraph 24 of the Complaint.

25.     The amended complaint alleged that Turan represented he would use the $50,000 from Tatyana to pay for remodeling work on the Keating property and that Turan drafted the promissory note. The amended complaint further alleged that Tatyana demanded repayment because Turan did not use the money on the project and was not making progress toward a sale of the property. The amended complaint asserted separate counts for breach of the promissory note, consumer fraud, and unjust enrichment. *Exhibit 1, paragraph 14.*

**ANSWER:**  Defendant admits the allegations contained in Paragraph 25 of the Complaint.

26.     Turan and Mint filed a motion to dismiss the amended complaint, arguing that it failed to state a cause of action and contained other defects. Among other arguments, the motion requested that the amended complaint be dismissed against Turan, in his individual capacity. In a written order, the circuit court observed that the amended complaint alleged that Turan personally guaranteed the note and the "Guaranty" language contained in the document was amenable to such an interpretation. Accordingly, the court denied the motion to dismiss Turan. Additionally, the court found that, though short on specifics and conclusory at times, the amended complaint sufficiently pled a cause of action for breach of contract and denied the defendants' motion to dismiss that count. The court agreed, however, that the amended complaint failed to plead sufficient facts to assert a claim of consumer fraud and impermissibly combined

causes of action. Therefore, the court granted Tatyana leave to amend her complaint to replead distinct counts and allegations specific to each cause of action. *Exhibit 1, paragraph 15.*

> **ANSWER:** Defendant admits the allegations contained in Paragraph 26 of the Complaint.

27. In July 2019, Tatyana filed a second amended complaint, asserting separate counts of breach of the promissory note: one count as to Turan personally and the other as to Mint. The second amended complaint further pled consumer fraud and unjust enrichment as to both Turan and Mint. *Exhibit 1, paragraph 16.*

> **ANSWER:** Defendant admits the allegations contained in Paragraph 27 of the Complaint.

28. The defendants moved to dismiss the second amended complaint arguing, among other things, that the complaint was legally deficient. In a written order, the court reiterated that an ambiguity in the promissory note could potentially mean that Turan was personally bound by it as a guarantor. The court rejected the defendants' argument that Tatyana did not allege that she made a demand, which the defendants contended was a condition precedent to any payment obligation. The court found the defendants' other arguments could be pled in an answer. As to the consumer fraud count, the court found that Tatyana did not plead sufficient specific facts to assert such a claim and dismissed that count. The court also dismissed the unjust enrichment count, as Tatyana premised that claim on an express agreement. *Exhibit 1, paragraph 17.*

> **ANSWER:** Defendant admits the allegations contained in Paragraph 27 of the Complaint.

29. The matter proceeded to a bench trial on the two counts alleging breach of promissory note. In his opening statement, Turan's counsel stated that the count against Mint "is [pled] in the alternative and, of course, that means only if [the count against Turan] would fail.

So, it would be one or the other, never both, in terms of what [Tatyana] in [her] pleading could possibly seek to gain." *Exhibit 1, paragraph 18.*

    **ANSWER:** Defendant admits the allegations contained in Paragraph 29 of the Complaint.

30.     Anna testified that Turan told her that he wanted the $50,000 check made out to Mint. Turan never indicated that repayment was conditioned on the sale of the Keating property. Rather, Turan informed her that he was personally guaranteeing repayment of the loan. That is what Anna understood the "Guaranty" language of the note to mean. She further stated that Tatyana first demanded repayment from Turan by text message in May 2018. Anna also testified that Turan admitted in arbitration that he used the funds he received from Tatyana to pay off his own personal loan related to a property in foreclosure in McHenry County, Illinois. A record from the Clerk of the Circuit Court for the 22nd Judicial Circuit established that a foreclosure case, in which Turan was a named defendant, was dismissed without prejudice on October 4, 2017. *Exhibit 1, paragraph 19.*

    **ANSWER:** Defendant admits the allegations contained in Paragraph 30 of the Complaint.

31.     On cross-examination, Anna testified that she was not present when Tatyana and Turan met to sign the promissory note and, thus, did not observe any communication between them. She explained that Turan sought the loan from Tatyana because the owner of the Keating property wanted to buy out another partner and complete the renovation for sale. *Exhibit 1, paragraph 20.*

    **ANSWER:** Defendant admits the allegations contained in Paragraph 30 of the Complaint.

32.     Called as an adverse witness, Volkan Turan testified that he had spent $60,000 of his own funds on Mint's Keating property rehabilitation and needed additional funds to complete the work. At the time Tatyana loaned him the $50,000, his own house was in foreclosure. Shortly after he received the funds from Tatyana, Turan made a $40,213 payment—the amount he was delinquent—on his home loan. At no time did he tell Tatyana he had used the borrowed money to pay off the arrears on his mortgage. Regarding the promissory note, Turan understood the "Guaranty" term to mean that Mint guaranteed the loan, not him personally. *Exhibit 1, paragraph 21.*

**ANSWER:**     Defendant admits the allegations contained in Paragraph 32 of the Complaint.

33.     Upon questioning from his own counsel, Turan testified that he first met Tatyana at a social occasion a few years before they signed the promissory note. Thereafter, he met with her a couple of months before the loan, and they discussed potential projects for the future. He further testified he met with Tatyana and Anna at a restaurant a week before he and Tatyana signed the note. Turan stated that he told Tatyana the money she was loaning him would be "tied to the property" and would be repaid after the Keating property sold. According to Turan, Tatyana drafted the promissory note and Anna sent it to him for review before Anna made final changes. Turan testified that he did not make or request any modification of the document. Rather, he just "need[ed] money" and would accept whatever writing Anna and Tatyana were "comfortable" with. Turan believed repayment of the borrowed funds was conditioned upon the sale of the Keating property. Turan further testified that Tatyana never requested his personal guarantee of the loan. *Exhibit 1, paragraph 22.*

**ANSWER:**     Defendant admits the allegations contained in Paragraph 33 of the Complaint.

34.     At the time of the loan, the Keating project was near completion. Turan had previously agreed with Wyngaart to evenly divide the proceeds from the sale of the Keating property. A potential buyer expressed interest in the property in 2018, when Turan began receiving communications from Tatyana and her attorney. However, the potential buyer ultimately chose not to purchase the Keating property. Turan's business relationship with Wyngaart deteriorated and the two were only communicating between attorneys. Woma closed on the Keating property sometime in 2018, without Turan's knowledge, and he received no money resulting from the sale. Ultimately, Turan did not believe there was any obligation to repay Tatyana. *Exhibit 1, paragraph 23.*

>    **ANSWER:**    Defendant admits the allegations contained in Paragraph 34 of the Complaint.

35.     Tatyana testified that Turan never told her that repayment of her loan was conditioned on the sale of the Keating property. Tatyana attested that she had incurred attorney fees related to this matter and authenticated invoices from her counsel. *Exhibit 1, paragraph 24.*

>    **ANSWER:**    Defendant admits the allegations contained in Paragraph 35 of the Complaint.

36.     During argument, the court asked Tatyana's counsel to respond to Turan's counsel's opening remarks, which asserted that, since Tatyana pled the counts against Turan and Mint in the alternative, if she prevailed on one, she could not prevail on the other. Tatyana's counsel acknowledged the counts were pled in the alternative, but he insisted they were not intended to be mutually exclusive. Rather, he asserted, Tatyana could prevail on both and requested all relief Tatyana was entitled to. *Exhibit 1, paragraph 25.*

>    **ANSWER:**    Defendant admits the allegations contained in Paragraph 36 of the Complaint.

37.     Turan's counsel countered that Tatyana was trying to "have it both ways;" that is, that she was pointing to Turan's single signature as both Mint's acceptance of the promissory note and Turan's personal guaranty. Counsel contended that if Turan's signature signified his personal guaranty, then the promissory note lacked a signature on behalf of Mint. Alternatively, if the signature was on behalf of Mint, then Turan was not personally bound. In his view, the one signature could not obligate both Turan and Mint. Counsel further argued that the debt never became due because repayment was contingent on the sale of the Keating property. And, though there was a closing on the property, Turan had no part in it and never received any proceeds from that sale. Rather, he lost the $60,000 he had put into the rehabilitation. Counsel also argued that the demand term, which stated, "[t]his note shall at the option of any party hereto be due with two weeks notice prior closing of the property" meant that a demand could only be made within two weeks before the closing. Thus, he submitted that Tatyana did not make a proper demand under the note to trigger any repayment obligation. *Exhibit 1, paragraph 26.*

**ANSWER:**    Defendant admits the allegations contained in Paragraph 37 of the Complaint.

38.     The court ruled orally that, in signing the promissory note, Turan had agreed to act as personal guarantor. Thus, the court entered judgment in favor of Tatyana, against Turan, in the amount of $50,000. The court also found that Tatyana was entitled to 5% interest, accruing from the date of her demand in May 2018, in the amount of $6041.67. The court also entered judgment against Mint in the same amount. The court added that it did not find repayment to be contingent upon the sale of the Keating property. Regarding Tatyana's request for attorney fees, the court stated that it was taking her request as an "opening submission" and allowed the defendants 10 days to file a response. *Exhibit 1, paragraph 27. See attached as Exhibit 2 the court order entered by Judge Patrick J. Sherlock on October 26, 2020.*

**ANSWER:** Defendant admits the allegations contained in paragraph 38 of the Complaint.

39.     On November 24, 2020, the court held a hearing regarding Tatyana's request for attorney fees and on the defendant's motion to dismiss the request for fees. Counsel for Turan objected to an award of attorney fees, asserting that no fee petition was filed, and only invoices had been submitted at trial as an exhibit. Therefore, counsel argued the matter was not properly before the court. Counsel further contended that, without a filed petition, Tatyana had failed to demonstrate that the fees she was requesting were reasonable. Apart from the lack of a petition, counsel argued that Tatyana's request included fees for work unrelated to the legal matter between Tatyana and Turan. Specifically, the invoices included items pertaining to Anna's mechanic's lien case with Woma, which resulted in a settlement and the dismissal of those parties from the case. Counsel also urged the court to reject fees for work done prior to the filing of Tatyana's second amended complaint, as her first two complaints were found to be deficient. Likewise, counsel noted that Tatyana only succeeded on her breach of contract claims, as her consumer fraud and unjust enrichment claims were dismissed, and this should factor in what, if any, fees the court should allow. *Exhibit 1, paragraph 29.*

**ANSWER:** Defendant admits the allegations contained in paragraph 39 of the Complaint.

40.     The court found that the promissory note provided for the recovery of attorney fees if Tatyana were to prevail, and that Tatyana did prevail. The court went on to note that Tatyana introduced her legal expenses at trial and the court subsequently set a date to address that matter. While noting that the normal practice for requesting attorney fees is to file a petition following trial, the court stated it "doesn't mean that that's the only way it can be done." The court noted that the defendants' motion to dismiss the fee request challenged some fees with

14

specificity, so the court set the matter for an evidentiary hearing to take place the following day. *Exhibit 1, paragraph 30.*

**ANSWER:** Defendant admits the allegations contained in paragraph 40 of the Complaint.

41.     At the hearing, Tatyana's counsel testified in detail regarding the work performed on behalf of Tatyana and his billing practices, which included waiving certain fees and charging a lower rate for paralegal type work that he performed himself. Counsel recounted difficulties in perfecting service on certain parties and the necessity to serve all parties with a potential interest in the Keating property. He also explained his reasoning behind pursuing a mechanic's lien foreclosure—to force a sale of the Keating property—and for including a fraud count—to exclude Tatyana's claim from potential bankruptcy protection. Counsel clarified that another lawyer, with an "Of Counsel" relationship, made some appearances and performed some work on this case. In any event, the counsel's professional corporation billed Tatyana. Turan's counsel cross-examined Tatyana's counsel at length. *Exhibit 1, paragraph 31.*

**ANSWER:** Defendant admits the allegations contained in paragraph 41 of the Complaint.

42.     The court ruled as follows:

"I have heard the testimony of [Tatyana's counsel] as well as [Tatyana] at the trial. I think [counsel] makes a good point when he goes through the history of the case, including the motions to compel, the motions to dismiss, the arbitration, the third-party subpoenas, the efforts that this defendant made in order to delay and make it difficult for the plaintiff to win the case. All of that added to the costs of what might otherwise be characterized as a simple promissory note, but indeed, as [counsel] points out correctly, it wasn't necessarily a simple promissory note because this was not a note drafted by lawyers that was particularly clean. So there were some wrinkles in it. It was not easy by any stretch of the imagination, and it was complicated by [Turan's counsel's] able defense of the case. The bills total, including for the trial and the trial prep, total $15,331.15. [Turan's counsel] raises a good point when he suggests that perhaps Mr. Turan should not be on the hook for the attorney's fees incurred in the mechanic's lien claim brought on

behalf of Anna Rivtis. She was not a party to the case. I had done the math. The case was transferred from the Mechanic's Lien Division to the Law Division on February 7th, 2019. The total fees in advance of that date were close to $4,000. They were $4,968.93, but it can't be fairly said that all of that time was spent pursuing mechanic's lien because the mechanic's lien claim and the note claim were part and parcel of the same lawsuit. So I am going to reduce that amount by 50 percent, roughly, and make it an even $2,000 deduction, so the amount of attorney's fees awarded in the case is $13,331.15. That includes costs."
Subsequently, the court entered a written order consistent with its findings.

*Exhibit 1, paragraph 32. See attached as Exhibit 3 the court order entered by*

*Judge Patrick J. Sherlock on November 30, 2020.*

> **ANSWER:** Defendant admits the allegations contained in paragraph 42 of the Complaint.

43. On November 30, 2020, a three page Judgment Lien was filed on behalf of Tatyana with the McHenry County Recorder of Deeds as Document 2020R0051734. The first page is labeled as "Judgment Lien," the second page is the October 26, 2020 order and the third is the November 30, 2020. *See attached as Exhibit 4 the three page Judgment lien including the court orders entered by Judge Patrick J. Sherlock on October 26, 2020 and November 30, 2020.*

> **ANSWER:** Defendant admits the allegations contained in paragraph 43 of the Complaint.

44. The defendants then filed a motion to reconsider and vacate both the judgment and the award of attorney fees. The court thereafter entered a written order denying the motion to reconsider. The order stated that the court presided over a trial lasting "several hours." Evidence showed that Turan used the $50,000 from Tatyana to pay off a delinquent balance on his home mortgage. The court commented that the terms of the promissory note and other evidence did not corroborate but, rather, contradicted the defendants' claim that repayment was contingent on a profitable sale of the Keating property. Additionally, the court recounted that Tatyana testified that she understood Turan to have personally guaranteed the debt, while he denied such in his

testimony. The court found Tatyana more credible than Turan. Further, the court observed that Turan's signature did not include a reference to the corporation or his corporate office. Rather, Turan's signature could be taken as being both in his personal and corporate capacities. The court described the promissory note as "not altogether clear" but ultimately found that it constituted Turan's personal guarantee of Mint's corporate debt. Lastly, the court rejected the defendants' request to vacate the award of attorney fees. *Exhibit 1, paragraph 33.*

**ANSWER:** Defendant admits the allegations contained in paragraph 44 of the Complaint.

45. The following day, the court entered an order *sua sponte* vacating the judgment against Mint. The court stated that it reviewed Tatyana's second amended complaint and noted that it pled Mint's liability on the note only in the alternative to the other count alleging Turan was personally liable as guarantor. Since the court had entered judgment in Tatyana's favor with respect to the count against Turan, the court found that it could not enter judgment on the alternative count against Mint. *Exhibit 1, paragraph 34.*

**ANSWER:** Defendant admits the allegations contained in paragraph 45 of the Complaint.

46. On April 19, 2021, the Debtor purported to transfer title to the Barrington Hills Property by Quit Claim Deed to Chicago Title Land Trust Company, an Illinois Corporation as Trustee under the provisions of a certain Trust Agreement dated March 18, 2021 and known as Trust Number 800235633. The Quit Claim Deed conveying the Barrington Hills Property was recorded on title to the Barrington Hills Property as McHenry County Document 2021R0021419.

**ANSWER:** Defendant admits the allegations contained in paragraph 46 of the Complaint.

47.    Chicago Title Land Trust Company, an Illinois Corporation as Trustee under the provisions of a certain Trust Agreement dated March 18, 2021 and known as Trust Number 800235633 paid no consideration for the Barrington Hills Property.

**ANSWER:**    Defendant admits the allegations contained in paragraph 47 of the Complaint.

48.    The Debtor continued to live in the Barrington Hills Property after conveying it to Chicago Title Land Trust Company, an Illinois Corporation as Trustee under the provisions of a certain Trust Agreement dated March 18, 2021 and known as Trust Number 800235633 and did not sign a lease or pay rent to Chicago Title Land Trust Company, an Illinois Corporation as Trustee under the provisions of a certain Trust Agreement dated March 18, 2021 and known as Trust Number 8002385633.

**ANSWER:**    Defendant admits the allegations contained in paragraph 48 of the Complaint.

49.    The sole purpose for the existence of the Chicago Title Land Trust Company, an Illinois Corporation as Trustee under the provisions of a certain Trust Agreement dated March 18, 2021 and known as Trust Number 8002385633 was to hold title to the Barrington Hills Property (as well as for the two lots called the Ringwood Property and the Hickory Knoll Property although those transfers did not occur until July 13, 2022) and primarily was to frustrate the Debtor's creditors including Tatyana and prevent lien enforcement.

**ANSWER:**    Defendant denies the allegations contained in paragraph 49 of the Complaint.

50.    On June 21, 2022, a two page Judgment Lien was filed on behalf of Tatyana with the McHenry County Recorder of Deeds as Document 2022R0051734. The first page is labeled as "Judgment Lien," and the second page is a Memorandum of Judgment certified by the Cook

County Circuit Clerk. *See attached as Exhibit 5 the two page Judgment lien including the Memorandum of Judgment certified by the Cook County Circuit Clerk.*

> **ANSWER:** Defendant admits the allegations contained in paragraph 50 of the Complaint.

51.     On July 13, 2022, the Debtor purported to transfer title to the Ringwood Property by Quit Claim Deed to Chicago Title Land Trust Company, an Illinois Corporation as Trustee under the provisions of a certain Trust Agreement dated March 18, 2021 and known as Trust Number 8002389270. The Quit Claim Deed conveying the Ringwood Property was recorded on title to the Ringwood Property as McHenry County Document 2022R0024913.

> **ANSWER:** Defendant admits the allegations contained in paragraph 51 of the Complaint.

52.     On July 13, 2022, the Debtor purported to transfer title to Hickory Knolls Property by Quit Claim Deed to the Chicago Title Land Trust Company, an Illinois Corporation as Trustee under the provisions of a certain Trust Agreement dated March 18, 2021 and known as Trust Number 8002389270. The Quit Claim Deed conveying the Hickory Knolls Property was recorded on title to the Hickory Knolls Property as McHenry County Document 2022R0024914.

> **ANSWER:** Defendant admits the allegations contained in paragraph 52 of the Complaint.

53.     Chicago Title Land Trust Company, an Illinois Corporation as Trustee under the provisions of a certain Trust Agreement dated March 18, 2021 and known as Trust Number 800235633 paid no consideration for the Hickory Knolls Property or the Ringwood Property.

> **ANSWER:** Defendant admits the allegations contained in paragraph 53 of the Complaint.

54. On September 9, 2022, a Complaint to Foreclose Judgment Lien was filed on behalf of Tatyana in the Circuit Court of the 22nd Judicial Circuit, McHenry County, Illinois, as Case 2022 FC 000370. *See attached as Exhibit 6 the Complaint to Foreclose Judgment Lien with attachments.*

> **ANSWER:** Defendant admits the allegations contained in paragraph 54 of the Complaint.

### COUNT I
### OBJECTION TO DISCHARGABILITY PURSUANT TO § 523(a)(2)(A)
**False Representations False Pretenses and Fraud**

55. Tatyana restates the allegations contained in Paragraphs 1 through 54.

> **ANSWER:** Defendant restates and realleges his answers contained in Paragraphs 1 through 54 of the Complaint.

56. Turan—by way of a wire transfer—used $40,213 of the $50,000 business loan from Tatyana to pay his personal residential mortgage, which at the time was in arrears ("the improper payment"). *See paragraph 21 & 44.*

> **ANSWER:** Defendant admits that by way of a wire transfer, he used $40,213 of the $50,000 business loan from Tatyana to pay his personal residential mortgage, but denies the remaining allegations contained in Paragraph 56 of the Complaint.

57. The improper payment was not an agreed use of the $50,000.00 business loan and constituted a false representation that Turan would use the business loan for the Keating Property.

> **ANSWER:** Defendant denies the allegations contained in paragraph 57 of the Complaint.

58. The improper payment was not an agreed use of the $50,000.00 business loan and constituted false pretenses that Turan would use the business loan for the Keating Property.

**ANSWER:** Defendant denies the allegations contained in paragraph 58 of the Complaint.

59.     The improper payment was not an agreed use of the $50,000.00 business loan and constituted fraud that Turan would use the business loan for the Keating Property.

**ANSWER:** Defendant denies the allegations contained in paragraph 59 of the Complaint.

60.     At the time the representations were made by the Debtor, the Debtor knew that they were false and intended that Tatyana rely on them.

**ANSWER:** Defendant denies the allegations contained in paragraph 60 of the Complaint.

61.     At the time the representation was made by the Debtor, the Debtor did not intend to use the $50,000.00 business loan for the Keating Property.

**ANSWER:** Defendant denies the allegations contained in paragraph 61 of the Complaint.

62.     At the time representations were made by the Debtor, the Debtor knew his representations were false, and Debtor intended Tatyana rely on them so that she would make the $50,000.00 business loan with the Debtor.

**ANSWER:** Defendant denies the allegations contained in paragraph 62 of the Complaint.

63.     Due to the representations of the Debtor, it was reasonable for Tatyana to rely upon the representations listed above that were made by the Debtor.

**ANSWER:** Defendant denies the allegations contained in paragraph 63 of the Complaint.

64.     Turan transferred via Quit Claim Deed the Barrington Hills Property (*paragraph 46*), the Ringwood Property (*paragraph 52*) and the Hickory Knoll Property (*paragraph 51*) to Chicago Title Land Trust Company, an Illinois Corporation as Trustee under the provisions of a certain Trust Agreement dated March 18, 2021 and known as Trust Number 800235633 ("the three transfers").

**ANSWER:**     Defendant admits the allegations contained in paragraph 64 of the Complaint.

65.     These three transfers were made as a false representation and were a false representation and actual fraud to creditors such as Tatyana as the three transfers removed ownership from the Debtor to Chicago Title Land Trust Company, an Illinois Corporation as Trustee under the provisions of a certain Trust Agreement dated March 18, 2021 and known as Trust Number 800235633.

**ANSWER:**     Defendant denies the allegations contained in paragraph 65 of the Complaint.

66.     Debtor knew the false representation regarding the three transfers in that Debtor intended to deprive creditors such as Tatyana a lien as allowed by Illinois Statute.

**ANSWER:**     Defendant denies the allegations contained in paragraph 66 of the Complaint.

67.     Debtor intended Tatyana relied on his false misrepresentations regarding the three transfers.

**ANSWER:**     Defendant denies the allegations contained in paragraph 67 of the Complaint.

68.     The Debtor has filed an Adversary Complaint (23-96006) that alleges that no lien exists on three properties as a result of the three transfers.

**ANSWER:** Defendant admits that he has filed an Adversary Complaint (23-96006), but not on the basis of the transfers, but that the judgment lien was invalid.

69.     At the time Debtor made these representations regarding the three transfers, the Debtor did not intend to allow Tatyana the lien that she was entitled to.

**ANSWER:** Defendant denies the allegations contained in paragraph 69 of the Complaint.

70.     Tatyana relied to her detriment on the false representations alleged above and has suffered damages as a result.

**ANSWER:** Defendant denies the allegations contained in paragraph 70 of the Complaint.

71.     Debtor engaged in this deceptive pattern of conduct (the improper payment and the three transfers), in order to deprive Tatyana of payment in this bankruptcy case by making Tatyana a unsecured creditor.

**ANSWER:** Defendant denies the allegations contained in paragraph 71 of the Complaint.

72.     All of the debt owed to plaintiff, is non-dischargeable as it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, which was obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code § § 523(a)(2)(A).

**ANSWER:** Defendant denies the allegations contained in paragraph 72 of the Complaint.

## COUNT II
## OBJECTION TO DISCHARGABILITY PURSUANT TO § 523(a)(4)
### Embezzlement

73.     Tatyana restates the allegations contained in Paragraphs 1 through 63 as if fully restated herein.

**ANSWER:** Defendant restates and realleges his answers contained in Paragraphs 1 through 63 of the Complaint.

74.     Turan—by way of a wire transfer—used $40,213 of the $50,000 business loan from Tatyanna to pay his personal residential mortgage, which at the time was in arrears ("the improper payment"). *See paragraph 21 & 44*.

**ANSWER:** Defendant admits that by way of a wire transfer, he used $40,213 of the $50,000 business loan from Tatyana to pay his personal residential mortgage, but denies the remaining allegations contained in Paragraph 74 of the Complaint.

75.     The improper payment was not an agreed use of the $50,000.00 business loan.

**ANSWER:** Defendant denies the allegations contained in paragraph 75 of the Complaint.

76.     The Debtor by use of the improper payment appropriated funds for his own use or benefit.

**ANSWER:** Defendant denies the allegations contained in paragraph 76 of the Complaint.

77.     The improper payment was done by the Debtor with fraudulent intent or deceit.

**ANSWER:** Defendant denies the allegations contained in paragraph 77 of the Complaint.

78.     All or part of the debt owed to plaintiff, as evidenced above, is non-dischargeable as it is a debt for embezzlement caused by the Debtor within the meaning of Bankruptcy Code §523(a)(4).

**ANSWER:** Defendant denies the allegations contained in paragraph 78 of the Complaint.

**WHEREFORE**, the Defendant prays that the Plaintiff take nothing from this action, that the Defendant goes hence without delay, that the cost of these proceedings be taxed against the Plaintiff and for such other and further relief which is just and equitable.

Dated: November 14, 2024                    Respectfully submitted,

                                            VOLKAN TURAN


                                            By: ___/s/ David R. Herzog_____
                                                  One of his attorneys


David R. Herzog
Law Office of David R. Herzog LLC
Attorney for the Defendant
53 W. Jackson Blvd., Suite 1442
Chicago, IL 60604
(312) 977-1600
drh@dherzoglaw.com